Filed 5/20/22  In re R.W. CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION EIGHT

| | |
|---|---|
| In re R.W., a Person Coming Under the Juvenile Court Law. | B314287 |
| ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | (Los Angeles County Super. Ct. No. CK55230D) |
| Plaintiff and Respondent, | |
| v. | |
| F.P., | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Lisa A. Brackelmanns, Juvenile Court Referee. Affirmed.

Jacob I. Olson, under appointment by the Court of Appeal, for Defendant and Appellant.

Rodrigo A. Castro-Silva, County Counsel, and Kim Nemoy, Assistant County Counsel, for Plaintiff and Respondent.

⎯⎯⎯⎯⎯⎯⎯⎯

## INTRODUCTION

The juvenile court terminated Mother's parental rights to her daughter, R.W. On appeal, Mother does not contest the merits of the court's adjudication; instead, her sole contention is that reversal is warranted because substantial evidence does not support the juvenile court's finding that the Indian Child Welfare Act of 1978 (ICWA) (25 U.S.C. § 1901 et seq.) and related California law (Welf. & Inst. Code,[1] § 224 et seq.) do not apply to R.W.

We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Because compliance with ICWA is the sole basis for Mother's appeal, we recite only those facts pertinent to her claim.

On June 30, 2017, the Los Angeles Department of Children and Family Services (DCFS) received a referral alleging physical and emotional abuse and general neglect of Mother's youngest child, R.W., then two years old. This was not Mother's first experience with the dependency court system. Mother had three older children who were declared dependents of the juvenile court. After Mother failed to comply with her family reunification plan, the juvenile court terminated her parental rights as to those three children.

On July 28, 2017, DCFS filed a section 300 petition due to father's violent altercations with maternal relatives and mother's history of substance abuse. On November 16, 2017, a first amended petition was filed. It included an allegation that

_____

[1]    Undesignated statutory references are to the Welfare and Institutions Code.

mother threatened maternal grandmother's boyfriend with a knife and mother suffered from mental and emotional problems including depression, bipolar disorder, schizophrenia, and suicidal/homicidal ideation rendering her incapable of caring for R.W. Father's whereabouts became unknown around July, 2017, even before the initial petition was filed. His whereabouts remained unknown throughout the remainder of R.W.'s dependency proceedings.

On January 26, 2018, Mother eventually entered a no contest plea to the first amended petition which was sustained with interlineation. On March 16, 2018, the juvenile court provided Mother reunification services. Three and one-half years later, on August 3, 2021, over Mother's objection, the juvenile court found R.W. adoptable, found the parental-benefit exception did not apply, and ordered all parental rights terminated due to Mother's failure to complete her reunification plan.

*ICWA*

On July 6, 2017, before the filing of the initial petition, Mother stated neither she nor R.W. have Indian ancestry. Mother signed an ICWA-020 form indicating she has no Indian ancestry.

On July 6, 19, and 20, DCFS had contact with maternal grandmother. There is no evidence that an inquiry into the maternal family's Indian ancestry was made of maternal grandmother.

On August 27, 2017, maternal aunt and uncle contacted DCFS. They reported they had neither seen nor heard from Mother in over a year and believed she resided in St. Louis. There is no evidence they were asked about Indian ancestry. On September 8, 2017, Mother again stated she and R.W. do not

3

have Indian ancestry.  On the same date, Father stated he does not have Indian ancestry either.

On September 26, 2017, maternal grandfather denied Indian ancestry for himself, maternal grandmother, Mother, and R.W.  On September 28, 2017, DCFS contacted maternal grandmother, who was R.W.'s caregiver at the time.  She was not asked, however, about Indian ancestry.

On November 28, 2017, the juvenile court found it did not have reason to know R.W. is an Indian child, as defined by ICWA.

## DISCUSSION

I.    *Standard of Review*

We review the juvenile court's ICWA findings " 'under the substantial evidence test, which requires us to determine if reasonable, credible evidence of solid value supports the court's order.  [Citations.]  We must uphold the court's orders and findings if any substantial evidence, contradicted or uncontradicted, supports them, and we resolve all conflicts in favor of affirmance.' " (*In re D.F.* (2020) 55 Cal.App.5th 558, 565 (*D.F.*); *In re A.M.* (2020) 47 Cal.App.5th 303, 314; *In re Rebecca R.* (2006) 143 Cal.App.4th 1426, 1430.)  We review the evidence in the light most favorable to the juvenile court's findings and draw all reasonable inferences in support of those findings. (*In re J.N.* (2021) 62 Cal.App.5th 767, 774.)

The appellant—in this case, Mother—has the burden to show the evidence was not sufficient to support the ICWA finding.  (*D.F., supra*, 55 Cal.App.5th at p. 565; *In re Austin J.* (2020) 47 Cal.App.5th 870, 885 (*Austin J.*).)

4

II.     *Applicable Law*

ICWA reflects a congressional determination to protect Indian children and to promote the stability and security of Indian tribes and families by establishing minimum federal standards that a state court must follow before removing an Indian child from his or her family.  (25 U.S.C. § 1902; *Austin J.*, *supra*, 47 Cal.App.5th at pp. 881–882.)  Both ICWA and the Welfare and Institutions Code define an "Indian child" as "any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe."  (25 U.S.C. § 1903(4); see § 224.1, subds. (a) & (b) [incorporating federal definitions].)

The juvenile court and DCFS have "an affirmative and continuing duty to inquire whether a child for whom a petition under Section 300 . . . may be or has been filed, is or may be an Indian child."  (§ 224.2, subd. (a); see *D.F.*, *supra*, 55 Cal.App.5th at p. 566; see *In re Isaiah W.* (2016) 1 Cal.5th 1, 9, 11.)  This continuing duty can be divided into three phases:  the initial duty to inquire, the duty of further inquiry, and the duty to provide formal ICWA notice.  (*D.F.*, at p. 566.)

The *initial duty to inquire* whether a child is an Indian child begins with "the initial contact," i.e., when the referring party reports child abuse or neglect that jumpstarts DCFS investigation.  (§ 224.2, subd. (a).)  DCFS's initial duty to inquire includes asking the child, parents, legal guardian, extended family members, and others who have an interest in the child whether the child is, or may be, an Indian child.  (*Id.*, subd. (b).)  Similarly, the juvenile court must inquire at the "first appearance in court of *each party*" whether he or she "knows or

5

has reason to know that the child is an Indian child." (*Id.*, subd. (c).)  The juvenile court must also require the parties to complete Judicial Council form ICWA-020, Parental Notification of Indian Status.  (See *D.F.*, *supra*, 55 Cal.App.5th at p. 566.)  The parties are instructed to inform the court "if they subsequently receive information that provides reason to know the child is an Indian child."  (§ 224.2, subd. (c).)

A *duty of further inquiry* is imposed when DCFS or the juvenile court has "reason to believe" that an Indian child is involved in the proceedings "but does not have sufficient information to determine that there is reason to know" the child is an Indian child.  (§ 224.2, subd. (e); see *D.F.*, *supra*, 55 Cal.App.5th at p. 566.)  There is reason to believe an Indian child is involved whenever the court or DCFS has "information suggesting that either the parent of the child or the child is a member or may be eligible for membership in an Indian tribe." (§ 224.2, subd. (e)(1).)  Further inquiry as to the possible Indian status of the child includes: 1) interviewing the parents and extended family members to gather required information; 2) contacting the Bureau of Indian Affairs and State Department of Social Services for assistance in identifying the tribes in which the child may be a member or eligible for membership in; and 3) contacting the tribes and any other person that may reasonably be expected to have information regarding the child's membership or eligibility.  (§ 224.2, subd. (e)(2)(A)–(C).)

The juvenile court's finding there is a "reason to know" an Indian child is involved triggers the *duty to send formal notice* per ICWA to the pertinent tribe(s) via registered or certified mail. (§ 224.3, subd. (a)(1); see *D.F.*, *supra*, 55 Cal.App.5th at p. 568.)  "The sharing of information with tribes at [the further] inquiry

6

stage is distinct from formal ICWA notice, which requires a 'reason to know'—rather than a 'reason to believe'—that the child is an Indian child." (*In re D.S.* (2020) 46 Cal.App.5th 1041, 1049.)[2]

If the alleged shortcoming in the ICWA inquiry concerns only DCFS's duty of initial inquiry, only state law is involved. The reviewing court may not reverse unless it finds prejudicial error. (Cal. Const., art. VI, § 13 ["No judgment shall be set aside . . . unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice"]; *People v. Watson* (1956) 46 Cal.2d 818, 836 ["a 'miscarriage of justice' should be declared only when the court, 'after an examination of the entire cause, including the evidence,' is of the 'opinion' that it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error."].)

III.   *Analysis*

Mother argues the juvenile court's finding that ICWA did not apply to R.W. was "error as the Department's initial duty of inquiry was never fulfilled." She contends DCFS's initial inquiry was incomplete because DCFS contacted but never asked maternal grandmother, maternal aunt and maternal uncle about their family's Indian ancestry.

---

[2]   Here, neither the duty of further inquiry nor ICWA's formal notice provisions are at issue because Mother does not contend there is "reason to believe" the child is an Indian child. Rather, her single contention finds fault with DCFS's duty to conduct initial inquiry as to whether R.W. is an Indian child.

We agree with Mother's contention that DCFS had an obligation under section 224.2, subdivision (b) to inquire of extended family members about Indian ancestry. (*In re Benjamin M.* (2021) 70 Cal.App.5th 735, 742.) However, we find DCFS's imperfect initial inquiry harmless. DCFS did inquire of maternal grandfather who stated neither he nor maternal grandmother had Indian ancestry. Mother also denied Indian ancestry. Given the inquiry made of maternal grandfather, we find harmless DCFS's failure to also inquire of maternal grandmother or Mother's sibling. On this record there is no reason to believe Mother's sibling would have more accurate information about Indian ancestry than their own father, maternal grandfather. Neither is there reason to believe maternal grandfather would not have accurate information about maternal grandmother's ancestry.

We also note Mother has three older children who were declared dependents of the court and for whom her parental rights were previously terminated. If Indian ancestry had been an issue for R.W.'s three older siblings, Mother and her family had a strong incentive to bring that fact to the attention of the juvenile court to support Mother's objection to adoption by a non-family caregiver. No one did so. We infer that is because there is no Indian ancestry to discover. We conclude DCFS's failure to inquire further after both parents and maternal grandfather denied Indian ancestry was harmless as it was not likely to bear meaningfully upon R.W.'s status as an Indian child. (*Cf. In re Benjamin M., supra*, 70 Cal.App.5th at p. 744.)

## DISPOSITION

The judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


STRATTON, P. J.

We concur:



GRIMES, J.



WILEY, J.

9